Mister Jordan or whatever you really. Okay? Good morning your District Court erred when it refused to grant discretionary review of an erroneous appeal panel decision, which reversed the court-supervised settlement program's properly calculated individual economic loss claim in favor of the appellant. In accordance with this court's decision in Fleischman, which, notably, was issued after the incorrect appeal panel decision in this case, a business owner's individual economic loss claim for lost W-2 wages may only be precluded as an impermissible double recovery when two factors are met. Number one, the business economic loss claim of the employer, here Machine Specialty Manufacturing, or MSM, is resolved and paid through the Economic and Property Damages Court-Supervised Settlement Program, and the Court-Supervised Settlement Program categorized the owner's W-2 wages as a fixed expense when calculating compensation for the employer's business economic loss claim. Here, neither essential element is present because Ms. Vijay's employer, Machine Specialty Manufacturing, made the decision to settle all of its claims through the Confidential Neutral Settlement Program in 2016. As BP itself acknowledges in its brief, the neutrals did not utilize the Bell framework or the various compensation formulas therein when resolving Machine Specialty's claim. Instead, the neutrals employed their own confidential and proprietary methodology in formulating MSM's settlement offer. The neutrals' offer was a single number, did not include any calculations, there were no spreadsheets, there was no risk transfer premium, no claimant accounting support reimbursement. What is your argument that this was some sort of stray, strange, beyond-the-settlement proceeding that is not worthy of credence? What is your argument? And all of this seems to me has to have some authority of the settlement itself. I mean, that is the settlement procedures, whether they're the compromise procedures here or the formal procedures that one ordinarily goes through to sustain the claim. I don't understand. Well, I'm saying why isn't this settlement procedure entitled to the same benefit or the same authority or the same respect that the litigation proceeding has under the settlement agreement itself? All arise out of that framework. And I don't see why we treat one differently from the other. I understand your question, Your Honor. The neutrals settlement program, the neutrals were appointed by the district court with the agreement of BP and the steering committee to help resolve a lot of the claims that were pending in the court-supervised settlement program, which, as the court no doubt knows, consisted of probably a half million claims at some point or another. And it was in 2012 when the settlement was confected and put into place, and here we are in 2018, and the program is still going on. The neutrals approached various groups of claimants and submitted offers. These offers were not ñ they did not mirror the values or the valuations of the business economic cost framework. These were numbers typically much lower than the valuations of, say, for example, the claim for machine efficiency manufacturing. I mean, it was based upon the claim, though, was it not? Your Honor. I mean, he didn't just draw it out of thin air, did he? Actually, in some cases, that's not far from the truth, Your Honor. There were certain offers that were just ñ there was no rhyme or reason. Well, why would ñ if that were true, then why would the other party ever accept it? I mean, if it was so lacking in foundation to the claim itself. There are many aspects to this litigation, which I've got questions about to you, Your Honor, that I just ñ Well, we have to respect ñ yeah, but we have to respect ñ we know a lot of shenanigans that go on that we still have to respect because it's within the framework of authority. Well, Your Honor, the offers that were submitted by the neutrals, they ñ there was no methodology that was used. There was nothing that was given to us to say this is how we arrived at this number. In this case, actually, it was ñ the settlement offer for machine specialty manufacturing was exactly half of what was ultimately agreed upon. That ñ I believe it was around $200,000 that ñ or $212,000 that was offered and machine specialty rejected. We had the business economic loss claim valued by our forensic accounting experts at well over a million dollars. This was a fairly large business doing somewhere around $40 million a year in revenue prior to the spill, which it never recovered after the spill, by the way. But in any event, with all the ñ and there was also a claim that was filed. It was a lawsuit filed, so it was pending in the MDL. That's something BP doesn't mention. I mean, but that still doesn't account for the fact that the BEL was supposed ñ under the plan and what we've said in Fleischman, is supposed to account for all of the losses that the owner is asserting. Well, Your Honor, the Fleischman decision is based upon the calculations, the specific calculations and methodologies within the business economic loss framework. The way that that framework works is the owner's ñ the owner's W-2 wages are categorized as a fixed expense in those calculations. And as a result, whenever the business economic loss claim for the employer is calculated, those exact same losses are inherently compensated as a mathematical fact, which can be demonstrated on spreadsheets within that BEL claim. Therefore, allowing the business to recover and the owner to recover for those lost W-2 wages is inherently a double recovery. That can be shown. Okay. Here in this case, the mutuals did not utilize ñ Okay. Let me ñ in your claim, when you made your claim, did you claim a fixed paid income as part of your losses? Well, whenever we filed the claim, Your Honor, we filed the claim form and the monthly profit loss statements. And the claim for machine specialty was we filed a claim for one facility, which was in Houma, Louisiana. All right. The claim as a whole, there were a lot of questions as to whether or not it met the relevant causation framework. There were a number of questions that were unresolved. Okay. But did you ñ I mean, whenever you were treating compensation for the owner of the facility, did you treat it as fixed compensation or did you treat it as variable? Did you say, well, we're not claiming this amount of money because our profits went down that year, we didn't have any business, so we're not claiming that. You didn't say that, did you? I believe that it's more of a ñ I'm not a forensic accountant, Your Honor. Well, I'm not either, so I mean ñ It saves a lot of money, if it was. But ñ I mean, it just doesn't make sense to me, I mean, that whenever you filed this claim that was settled, that you would have filed your claim for less than you thought you might receive. And you filed it for as much as you thought you could possibly receive under the settlement agreement, and that would have included fixed salaries. Well, that's the way I would look at it. It just is a practical matter. I understand, Your Honor. And then you come in here and try to get ñ and then we flatly held, which is consistent with ordinary, normal thinking, that you can't get double recovery under this plan. Well, we're ñ And what you're trying to get is double recovery. I mean, that's just the way it seems to me. Well, I understand your point, Your Honor. I respectfully disagree that there's double recovery in this case, as I mentioned earlier. You're saying you don't know for sure if you represented in the original BEL claim whether it was fixed income or not. But whether it was or not, ultimately the BEL claim gets dismissed and is resolved by neutrals, correct? That's correct, Your Honor. And is there any case that clarifies ñ the neutrals are a take-it-or-leave-it system. Is there any case that we've written that says the neutrals exist and are bound by a framework that applies to CSSP? To my knowledge, Your Honor, and these cases are fairly recent because the neutrals program, again, came about in mid to late 2016. To my knowledge, this is the first case of its type since the briefing was concluded in this particular matter, I believe, 8th or ñ excuse me. Okay, but my question is just is there any case that we've described that the neutrals in how they come up with a settlement offer, take-it-or-leave-it, are bound by the methodology that applies to the CSSP? No, sir. I believe this would be a case of first impression on the neutrals involvement in this settlement program. I thought we said that the district ñ that here in the Bellwork framework inherently compensates the business owner for reduced owner-officer compensation, and the owners of the firm benefit from this compensation when we were holding it. That's correct, Your Honor. And the Fleischman decision does say that, and we happen to agree with the Fleischman decision because it is ñ it's just a mathematical fact. But in Fleischman, they're describing the CSSP process. That's correct, Your Honor. Okay, and in Fleischman, do they ever point to anything in the settle agreement that describes how owner income will be classified? Yes, Your Honor. There are certainÖ They do, or do they say that the parties agree in this case it was fixed income? Which is the answer? In Fleischman, when our court said wages are fixed into it, did the court point to any language in the settle agreement? Yes, Your Honor. It did? In the settlement agreement into the business economic cost framework in Exhibit 4, there's Exhibit 4A. That gives the documentation requirements. Exhibit 4B are your causation requirements. Okay, and where ñ quote me in Section 4 where it says owner income is fixed. Owner-officer or owner compensation is deemed to be fixed in Exhibit 4C, Your Honor. Deemed to be? Deemed to be, yes, Your Honor. That was negotiated by the parties, and they came up with formulas for everything because they wanted to have a ñ they wanted the CSSP, the drafters that is, to build upon the GCCF, which suffered from perceived lack of transparency and inconsistent results. And so they wanted an agreement that could be utilized to try and wrap up this massive unprecedented litigation. So it's your position that we said in Fleischman exactly what the settlement agreement says, which is in a BEL claim that's going to be resolved by CSSP, owner income is part of. That's right. Okay. And so it looks like what happened here, to me, the appeal panel just made a mistake. They just thought your case was processed through CSSP. That's correct, Your Honor. That's our position, and looking back, it appears that that's the case because that appeal panel ñ But what then ñ I hate to say this because it seems difficult and equitable outcome. If that's true, why would Judge Barbier have reversed as to his abuse to deny discretionary review? If it's just an outlier one-fact wrong case, what's the authority that we would reverse his discretion? It sounds tough, but you see my point? Yes, Your Honor. I think I do. If no other appeal panel post-Fleischman has ever stated the law that way or made the mistake ñ Not yet, Your Honor. Not yet. Yeah, I know. We've got ñ like I said, I mean these, as you've seen, are 28J letters. These decisions seem to be coming out every ñ with every new ñ I know, but they're awfully ñ they're all in consensus post-Fleischman, that you should have gotten what your client's husband got. That's correct, Your Honor. And as you can imagine, that's a rather difficult situation for the BJ family with the wife having her claim just summarily taken away. And if you read the appeal panel decision, there was very little reasoning, just kind of a summary. I guess I'm still struggling. Our law was fairly developed as to when we will reverse Judge Barbier for not exercising discretionary review, and it seems like it's pretty specific. And it's got to be something contradicting the settlement agreement or something where we have a significant division of appellate panels. But here we've got just a real oddity. Well, like I ñ as I mentioned, Your Honor, I believe this is the first, and I believe there's others that will come out because BP will no doubt continue to raise that in subsequent cases that come out. To your knowledge, they've never won post-Fleischman though, right? To my knowledge, as I said, yet. But at the same time, Judge Barbier had the benefit of the Fleischman decision whenever it was on discretionary review getting denied grant. Well, the question here is double compensation. It's whether there was double compensation here. Is that a fact question that we would send back to Judge Barbier to dig deeper into this case to determine what your ultimate claim was? Because the settlement had to be based on a claim. It had to be based on a claim that was before the neutral, right? Yes, sir. From what I understand, the neutrals were given access to certain documents that were filed with the settlement program. And based on those documents, they came up with an offer and came to conversations with the neutrals. More recently, I was told they generated a number that they thought ñ that they hoped that the claimant would accept. But in that claim ñ and I'm asking this in that ñ because I don't know the answer. But in the claim itself, did the claimant make a claim for the salaries or the income as a ñ that he would have ordinarily made as a loss that BP is paying for, settlement or otherwise, in the BEL? No, sir. Whenever we submitted the claim for machine special manufacturing, we simply gave ñ we simply provided the required documents under the settlement agreement. That's exhibit 4A, which simply requires federal tax returns, all schedules and attachments for the business, and monthly profit and loss statements for the particular facility that we were claiming for, which my client did not work at that particular facility. It was more of a satellite facility out in Houma. The company itself is based in Youngstown, which is 100 miles away, I believe. But your client was an owner or part owner of the business. She was at the time a minority owner, Your Honor. At the time of what? At the time of the spill, Your Honor. I'm not sure what that ownership interest is now, but she was not a majority owner. She probably would not have gotten fired. But she had been compensated in the past? I mean, I don't ñ She received W-2 ages, Your Honor, up until about a month after the spill, when she was terminated because of the spill. Oh, she was terminated? Yes, Your Honor. She and her husband. Thank you, sir. Mr. Nielsen. Mr. Nielsen, thank you. Let me ask you. What is the issue in this case that we are supposed to decide ñ in these two cases that we are supposed to decide, aside from the abuse of discretion, whether he abused his discretion, assuming he abused his discretion? What is the issue that you ñ Well, the issue as we understand it, Your Honor, is last year this court said in double recovery or Fleischman II that if you are a business owner and you file a BEL claim, your business files a BEL claim, then you are inherently compensated for all of your losses. The only difference between that case and this case is instead of making the person go all the way through the end of the CSSP process, they settled the claim early through the neutrals, and then they released their BEL claim. And the question is, is that difference ñ is that a difference or just a distinction? And BPís position is that is just a distinction. Itís not a difference. This court said in Fleischman II the BEL framework inherently compensates you. They received an award based on the BEL framework. So by any measure, this is double recovery. If they can then turn around and file in their individual capacity an IEL claim, and itís going to ñ with respect, if this court were to agree with that theory, it would really hinder Judge Barbierís ability to use the neutrals to try to expedite the resolution of this MDL. So thatís BPís position. And this position is BPís as to both cases? Yes, Your Honor. On the merits. On the merits, the substantive merits of how you interpret BEL, IEL, and Fleischman II slash double recovery, yes, that is BPís position. Thereís the question ñ the threshold question that Judge Shelley mentioned about discretion and how that plays out across these issues. But on the merits, we see no ñ But that threshold question is whatís legally in front of us. Did he ñ and youíre arguing opposite positions as to each. Correct, Your Honor. And the story on that is last year ñ well, as the court knows, this is the third time the question of how IEL and BEL relates comes up. You can go back to the court and look at 2012. Even before the settlement was confirmed, BP had been arguing that you canít file both types of claims. We thought last time the schedule was finally dead, that the court had put a stake in its heart and said, ìNo, you cannot file an IEL claim and a BEL claim.î We got the first one of these came up from Ms. Vijay, and we said, ìSheís trying to do exactly what this court said they couldnít do. Thereís no difference between a settlement and letting the CSSP decide.î So we said, ìThis canít possibly be correct. No wonder the court said ñ the CSSP appeal panel said this isnít correct.î And then we said, ìWell, what is their argument that it is?î And they had one post-record decision, thatís Stanley Vijay, and they had a decision about the Gulf Coast Claims Facility, which isnít even related at all. And we said, ìThe burden is on them to show that thereís an abuse of discretion here, and they certainly havenít done it.î Then subsequently we get these other ones that start coming down the line, and we said, ìOh, I guess this issue does come up,î which was confounding to us because, again, as we read the courtís decision in Fleischman 2, we thought this issue was finally resolved. This had been a fight that had been going on since 2012. We thought the court had finally resolved it, and then nonetheless we still see folks trying to get around this courtís decision. So thatís our question on the threshold question here. We would say the court should deny or should affirm Judge Barbierís dismissal for not as an abuse of discretion here. So not an abuse of discretion, deny review to them. But as to Fixel and Battleó Well, before we get to Fixel and Battle, then youíre happy to live with the discontinuity between Stanley, the wife, and the husband. He recovers, she doesnít. Well, we haveóonce this issue started popping up, we have since appealed Stanley Vijayís appeal as well. That had not been the case at the time when we filed this initial brief. But if we were to be consistent and affirm discretion to deny in all or reverse, which is the more persuasive approach, rather than picking and choosing? Sure. If youíre going to be consistent across all of them, I mean our position would be that this court shouldóIím trying to do the analysis here. I think we would say that leave the split issue aside and look at the merits, and I think we certainly went on the merits. So I would say that if you have one or the other on that question, letís get to the merits. But to be clear, thereís a goodó Which would say she getsóhe made an abuse in her case but not in the others. That would be that position? The other way around, Your Honor, that Judge Barbier abuses discretion on all of them. I thought that was your question. Okay. All or none. All or none, and we would say he abuses it on all. But again, to back upó Even as to her. Even as to her, but to back up here, thereís a difference. For her claim, the appeal panel said she doesnít get compensation. For everybody else, the appeal panel said they do get compensation. Right. And this courtís Fleischman II decision, which was a big victory for BP, thatís the question. Is that going to be vindicated? And it seems to me that in determining whether thereís an abuse of discretion, it surely matters whether theyíre vindicating this courtís decision or theyíre undermining this courtís decision. But when you sayó But is it justóis it basically just the fundamental question of there will be no double recovery? Is that it? I meanó Yes, Your Honor. Yes. Andó The way that this system is built up, the IEL and BEL system, by designóand the text would be in Exhibit 4D. If you want to look at that, it goes back toó Iíd love it if either of you would quote the text in Exhibit 4B. Youíre both referring to it. Whatís the text that classifies Howard? Exhibit 4D says they have a list in 4D of how youíre going to allocate expenses as fixed or variable. Then thereís an asterisk that says, you know, these areófor compensation, itís either fixed or variable, depending on the facts, parentheses, with the exception of owner officers, which are deemed fixed. Iím paraphrasing, but thatís the text. The other text I would refer you to would be the first portion of Exhibit 8A, which directs claimants who have filed business claims with revenue on Schedule E. They have to use the IELóthe BEL framework. And alsoó Thatís the 3884. Thatís the 3884. No panelís accepted. I donít agree with that, Your Honor. Well, what panel has accepted that? Well, my understanding isówell, again, itís hard sometimes to tell for sure what theyíre saying. My more fundamental point is I think Iím correct that, based on the 28 days and everything, no appeal panel since Fleischman II has ever had any confusion about the neutral process not being one that necessarily includes fixed. Okay. All right. So thereís two issues going on here. And the two issues are there is how the neutrals work within the Fleischman II framework. Yes. And then thereís the question of what do you do with 3884. Put 3884 aside. Letís put that aside. Weíre talking past each other. They say that. They say that after Fleischman II, no appeal panels have gone their way. That is correct but misleading. And itís misleading in the sense of Ms. Vijayís claim itself was decided after Judge Barbier. So hereís the chronology. In Fleischman I, this court said Judge Barbier has to decide this. Judge Barbier then decides this in 2016 and says exactly what this court ends up saying in 2017. He says under the BEL framework, thereís no double recovery. You canít allow double recovery because the BEL framework inherently compensates you. But that makes sense if he reads the language of the appeal panel in Ms. Vijayís case because they mistakenly said her case was treated as one whereas the BEL claim was being processed through the CSSP. So he would have read that and he puts it in the right box. Heís consistent with Fleischman II. Itís a mistake of fact but heís right. Then every single other caseóweíre talking a lotóthey read Fleischman II to say the neutral process isnít in the shadows of anything. Itís a take-it-or-leave-it, quick money fix. It doesnít have any control over how owner compensationóthat seems to me what every single appeal panel is saying. With respect, Your Honor, I would disagree with that reading of Ms. Vijay. The panel was very clear that this was a neutral settlement. It was? Yes. I would refer it as ROA 2723. The language is there. BP raises the question and says they resolved this through the neutrals, but the BEL framework inherently compensates them. What are we talking about now? What decisionó Ms. Vijayís decision here, the appeal panel. So again, thatísó Okay. So your position is that hers was processed to finish CSSP? No, no, no, no, no. That she used the BEL framework. Thatís the position that we have taken. So this goes back to what does it mean to settle a claim? Yes. And this is where I just get very confused. How I was taught settlement isóI believe Judge Jollyís version of itóis you seeóthis is the value of the claim. Now here are the rewards on the claim, and hereís the other interest that go into it, but the top value is the value of the claim. And if the claim is worth a certain amount of money and they offer less than that, you say no. And if itís worthóif they offer more than what you think the claim is really going to be worth, you say yes. But the value is driven by the value of the claim. Driven or bound by? Driven or bound by? Bound by, Your Honor. And whatís your authority for that, that the neutrals are bound by the framework from the settlement agreement that the parties are opting out of to get a fast solution? They canít opt out of the framework of the BEL agreement. My question is to you. Whatís your authority for the fact that the neutrals are bound in whatever number they come up with by the methodology thatís in the agreement? I mean I guess my authority would be Adam Smithís Wealth of Nations, Your Honor. Adam Smithís Wealth of Nations. My point being this. Itís fundamental. Itís in the framework. BP would never pay more than the claim is worth, and a party would never accept less than they think the claim is worth. So the framework itself sets the right. So, for instance, this Court sees examples all the time where why do plaintiffs seek punitive damages? They seek punitive damages, often not realizing the case is going to settle because that makes the top value much higher, and then the parties end up settling it. Itís the framework itself that drives the top value from which the settlement drives. So by any measure, by any measure, this is double recovery because they got some money from the BEL framework, and now theyíre trying to go around to the IAL framework. But to be clear, to be clear, even if this Court isnít persuaded by tható and again, we were very surprised when this case even came up because it struck us that thatís exactly the nature of settlement. Thatís what a settlement is. I would still point the Court to the 3884 argument, which I think here is just dispositive. By any measure, thereís no question that she has business income on her Schedule E. You read the text of 3884 on the first part of Exhibit 8A. You canít then turn around and file a claim, and this isnít by accident. This isnít BP playing gotcha. Itís because built into the settlement itself is the idea that we want to channel all business owners into the BEL framework. And why is that? Because if they are in the BEL framework, theyíre inherently being compensated for all of their losses. If you own a business, you can pay yourself however you want. You can pay yourself wages, or you can pay yourself in profits, or you can just let your business become more valuable. Itís completely arbitrary because youíre your own boss. And, for instance, in this case, they talk about how Ms. DJ was terminated. I urge the Court to look at the record on that. Sheís terminated by her husband, and sheís still co-owner of the business. So you choose how youíre going to pay yourself. Well, once you have a system like that, it makes no sense to allow people to start using the IAL framework, which is for regular employees. So the system by design says weíre sending all of those folks over into the BEL framework. Thatís why BP, again, since the beginning of the settlement, has taken the position that you canít file an IAL claim if youíre a business owner. Because if you do, youíre always going to end up in a world where youíre getting that double recovery, which we thought, again, that this Court had put a stake in the heart last year in the double recovery. That was a question I had. So no IAL claim can be filed before a BEL. We could never have the opposite problem. Letís say weíre just in the CSSP structure. No oneís going to try to say owner canít file IAL first, get that money, and then what would happen to the BEL claim? Correct. BPís position, going back to, like I said, 2012, if we produce a cite on that, itís 3723. BPís position has been you cannot file both. I know, but Iím wondering, what if you file an IAL first and then you recover on it? What happens then under Fleischman II? No double recovery. Well, I know thatís the principle. Iím asking you again. What has happened, to your knowledge, given the history of these claims? IAL claim paid. What happens? Our understanding is that such an IAL claim should never be allowed. Even if there hadnít been a BEL claim filed? If you file an IAL claim, thereís no relation at all to your business income. So, for instance, youíre an employee. You own a business, and you also do something else on the site. You can file an IAL for that. Our position has always been you canít file that IAL claim for your wages and then file the BEL claim. Again, for the reasons this Court said last year in Fleischman II, the BEL framework is specific. The specific governs the general. IV-D specifically addresses this. And then the other structural hints in the settlement point you all in that direction as well. So when Judge Barbier looked at this, Judge Barbier said this is double recovery if we do anything else. So one way you can imagine this, and I think this goes to your point, is choose your own adventure. You can either go the BEL route or you can go the IAL route. As BP understands the settlement, youíre not allowed that choice. And the reason youíre not allowed that choice is, one, because the BEL framework is specifically designed for this situation. But, two, youíre going to get all sorts of weird hypotheticals like this where you have a race, which decision goes first. No, Fleischman ñ I like that analogy, no two adventures under the CSSP. I think if we do reach the merits, and Iím not sure Iím convinced we should, Iím not convinced that the third adventure isnít allowed to both parties. In other words, BEL claim filed. Both people feel very apprehensive about how long itís going to take. They just want to shortcut settle it in a complete black box of confidentiality. And a number comes up, and itís a big compromise. I donít understand why we have to assume that number is controlled by the framework. Thatís the merits difficulty that I think youíre hearing both questions on. I understand. I understand. So, look, I appreciate you bringing that up because Iíd like to tackle that. Now, hereís the issue. Letís go back and kind of look at this from a common sense perspective. BP is trying to expedite resolution of these, just like Judge Barbier, because we donít want this case to go on forever. The Exxon Valdez litigation took 26 years. Weíre trying to avoid that. Okay? So the question then is why would BP ever settle a BEL claim, ever, if they knew that the person was going to turn around and file an IEL claim? All BP would do in that situation is say, ìYou know what? We are not going to settle anything, ever.î ìBecause weíre going to know because once we get that BEL resolved, your IEL claims are gone.î Thatís the reality of it. Why would BP ever settle that? So here Judge Barbier, who knows the neutrals process better than anybody he createdóhe also oversees the settlementósays, ìWell, weíre going to have these neutrals, and theyíre going to resolve these BEL claims quicker and faster through the neutrals process.î So BP says, ìOkay. All right. We will sign off onto that settlement because we know that weíre still going to get the same benefit that we would get if we went through the entire litigation.î ìAll we have done is tried to expedite resolution of this claim, so this thing doesnít take 26 years.î Thatís the nitty-gritty reality of this thing. If this court were to say that thatís not appropriate or thatís not allowed, well, then the incentives are very, very clear, which is donít settle BEL claims. And that doesnít make any sense. So when you read what people thought they were getting, itís apparent that that wouldnít make any sense. And by the way, it would create real unfairness as well. How would it create unfairness? Well, it would create unfairness because you would have this weird kind of race dynamic where some folks, they try to go through an IEL framework where their business is going through the BEL framework. This one gets decided first, and then theyíre out. This one gets decided first, and then you figure out what to do with this over here. It would treat people similarly situated the same, and it would just create a real mess, which goes back to BPísÖ Could the settlement agreements contain a provision that releases any IEL claim? Hereís the problem with that. The problem with that, which again, obviously, we would love that. The problem with that is a BEL, a company, is not necessarily the same as the owners. Now, often itís the case where the owners all agree and everybodyís happy, and theyíre happy to work with the BEL, with the entity. But thereís also a case, of course, where you have owners who disagree. So you canít make the entity sign the contract and then necessarily make all of the individual owners on board. So what BP would have had them do in that situation is either, A, make the BEL entity go and get signatures from all of its owners. You might have collateral litigation going on over there, thus defeating the purpose of trying to settle this thing. Two, they could just not settle them at all. Or three, what they could do, as we did do, is say, ìAll right, youíre going to settle your BEL claim. Your BEL claimís going to go, and weíre going to rely on our version, our interpretation of the IEL-BEL framework, which weíve been advancing since 2012. Which is, once youíre compensated for a BEL, itís double recovery to be compensated for an IEL, and we canít do it.î And thatís the reason why BP said, ìYou know what? Weíre going to have you waive your BEL right, which is your only claim that you have under Section 10 of the release. Thatís the only claim that you have, and weíre going to rely on our consistent interpretation that has been adopted every time an article three court has looked at this the exact same way. And thatís how we ended up resolving it the way that we did.î I see that my time has expired. Thank you, Your Honors. Thank you, sir. Your Honors. BP settled these cases because it killed 11 men as a result of its gross negligence and lawful misconduct. Shortly before that, it killed a bunch of people in Texas City. Weíre not a jury. I agree. Thatís not helpful to me. Whatís helpful to me is the legal principle on the merits of whether or not the neutrals are bound by the methodology that you both say exists in Section 4. Your HonorÖ Are they bound byÖ The neutrals are not, no, Your Honor. Theyíre not bound by any of that, and in factÖ But they say itís common sense. It will freeze up the whole system otherwise, and Adam Smith says they must be. Now, I donít say that mockingly. I suppose some of those arguments have some traction. Whatís your best authority that the neutrals, when theyíre coming up with an expedited, fixed solutionóI donít mean fixedósolution donít have to adhere to the parallel process? Your Honor, keep in mind these cases are already settled. There was a settlement agreement in place in 2012 that was 1,200 pages that was negotiated for nearly a year by some of the greatest legal minds in the world, many of them. They had the best actuaries. They had the best data. They had two years of experience trying to resolve these cases, and thatís what they came up with, and it was touted as a modern legal marvel. Shortly after, BP got what it wanted out of the deal and turned it around. I know thatís all history. In this specific unusual situation, Fleischman, too, has made it exactly clear what happens on the CSSP, but it seems like we have a consensus of panels that are saying that doesnít apply to the neutrals. Thatís correct, Your Honor. Is there a rationale that they have asserted to support that, the panels? Excuse me, sir? Have the panels asserted a rationale that supports the position that the settlement program or the neutrals are to be treated differently from a litigated settlement? Well, the appeal panelists in the CSSP have been around since 2012, so theyíve kind of seen it all. But do they offer any rationale? What is the rationale they offer that Fleischman does not supplyódoes notó Because the double recovery in Fleischman is clearó I mean, itís the same thing weíre arguing. Itís a mathematical fact, and when you compareó But Iím asking, do they assert that themselves? Does the panel articulate that rationale that we are arguing here today? Certain panels have, Your Honor. Theyíve commented that there is no way for them to know how oróthey recognize the fact that the neutrals did not, in fact, use the Bell framework. So the underpinnings of Fleischman, the double recovery, the inherent double recovery, thatís simply not present in the neutralsí offers or in the GCCF, for that matter, or anything other than the actual business economic loss framework. And, in fact, here, for example, with machine specialty, the neutralsí offers that we received was far less than what the Bell calculation estimated provided. And whenever you addedóand the reason why our client decided to accept that offer was because when you take the offer that weówell, the first one was rejected, and the neutrals came back at the last second, and they basically doubled the offer. So that tells you right there there was no real methodology. It was more ofó Yes, but all the claimsóall the claims that you had presented to justify the settlement were before the neutral, I assume. Iím sorry, Your Honor, what was that? All of the claims that you had presented were before the neutral. So, I mean, he settled the claim that you would have litigated, and that included the fixed income of the office owners. We also had a claim for MSM pendingówe filed a lawsuit in the MDL as well, Your Honor. There were some very real questions as toóthere was a lot of gray area with respect to machine specialty manufacturing and how the settlement applied. But all of that was beforeóin what you settled. But it included all of the claims. It wasnít that you omitted, whenever you settled the case for the neutral, all of the income or benefits or compensation that the office owners had received. You didnít omit that. That was before him as part of the settlement, wasnít it? No, Your Honor. The claims wereó Your claim was being settled. Is that correct? Your BEL claim was being settled, and your BEL claim included the compensation for the officers. Well, the Bell claim byóI mean, it is the purpose of a settlement. We were notómy client wasnít allowed to resolve that claim or was not in a position to wait out the settlement program for a bunch of different reasons, including the fact that the business just continued to go downhill and it simply never recovered. And so worn out, out of money, in desperate financial straits, they accepted to take, as the neutrals put it, a bird in the hand rather than two in the bush, despite the fact that BP agreed to the settlement program in 2012. Your time has expired. Thank you, Your Honor. Weíll call the third and last case.